MARK GOLDROSEN, CBN 101731
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, California 94103
TEL: (415) 565-9600
FAX: (415) 565-9601
markgoldro@aol.com

Attorneys for Defendant
JOSE JUAN BARRERA HUERTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 21-cr-00252-001 JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT BARRERA HUERTA'S |
| | ) | SENTENCING MEMORANDUM |
| vs. | ) | |
| | ) | |
| JOSE JUAN BARRERA HUERTA, | ) | |
| | ) | |
| Defendant . | ) | DATE: April 25, 2022 |
| | ) | TIME: 10:30 a.m. |
| _____ | ) | DEPT: Hon. James Donato |

Defendant JOSE JUAN BARRERA HUERTA remorsefully appears before this honorable Court for sentencing. The defense respectfully requests that the Court sentence Mr. Barrera Huerta to 40 months of imprisonment, followed by four years of supervised release with the conditions recommended in the Presentence Investigation Report (hereafter "PSR"). As explained below and in the PSR, there are numerous mitigating circumstances warranting a downward variance from the applicable guideline range, including Mr. Barrera Huerta's poor living conditions and exposure to violence in Mexico, his exemplary performance on pretrial release, his close relationship with his minor children and their mother, and his strong work ethic.

BARRERA HUERTA SENTENCING MEMORANDUM
21cr0252-001 JD

## I.    MR. BARRERA HUERTA'S BACKGROUND

Mr. Barrera Huerta is 40 years old. He was born and raised in Michoacan, Mexico under difficult circumstances. His family was very poor and struggled to make ends meet. Their home was a house on a ranch that consisted of two rooms, with a kitchen and toilet outside. Mr. Barrera Huerta shared a bedroom with his younger sister. In order to help the family financially, Mr. Barrera Huerta stopped attending school in the ninth grade and began working  as a fisherman.  PSR at ¶¶ 55, 68.

Although not a victim of abuse at home, Mr. Barrera Huerta was exposed to a tremendous amount of violence in his community. He often heard gunfire in the neighborhood. Drug cartels killed many people he knew, including members of his own family. Other family members were targeted for execution, but fortunately survived. *Id*. at ¶ 55. "Exposure to community violence has been linked both to the presence of clinical symptomatology and impairments in normal development." Michael Lynch, *Consequences of Children's Exposure to Community Violence*, Clinical Child and Family Psychology Review, Vol. 6, No. 4, December 2003 at 266.[1] In addition, "many studies have demonstrated that exposure to community violence can be traumatic for children." *Id*. at 267.

Because of the reoccurring violence in his neighborhood, Mr. Barrera Huerta left Mexico at age 18 and immigrated to California. PSR at ¶ 55. After arriving here, Mr. Barrera Huerta obtained a work visa. He has now been steadily employed at various jobs for more than 20 years. Initially, Mr. Barrera Huerta worked as a cook and then operated machinery at Jimbo Candy. He was later employed by a recycling company. From 2012 until 2016, he was a laborer at a friend's construction company in San Jose. Mr. Barrera  Huerta's next job was with Better Brand Vitamin Company, where he cooked vitamins from October 2016

---

[1] https://www.researchgate.net/profile/Michael-Lynch-3/publication/8921269_Consequences_of_Children's_Exposure_to_Community_Violence/links/5485952d0cf283750c372b0e/Consequences-of-Childrens-Exposure-to-Community-Violence.pdf

BARRERA HUERTA SENTENCING MEMORANDUM
21cr0252-001 JD

1   until his arrest on September 16, 2020. *Id*. at ¶¶ 67-68.

2         While working in the United States, it was very important to Mr. Barrera Huerta that

3   he be able to provide financial support to impoverished family and friends in Michoacan. Mr.

4   Barrera Huerta found, however, that even though employed, he could not keep up with the

5   support needed in Mexico and pay for his own living expenses. Several family members in

6   Mexico had medical emergencies and Mr. Barrera Huerta had to pay for their treatment. In

7   addition, Mr. Barrera Huerta's oldest daughter was born on October 3, 2018, adding another

8   family member to the list of persons he was assisting. In order to meet the financial

9   obligations he had assumed, Mr. Barrera Huerta made a very unwise decision that he deeply

10   regrets today. He became a drug seller, using the proceeds from his illegal business to make

11   up for the shortfall in his legal income. His drug sales resulted in state court convictions in

12   2013 and 2015, but unfortunately these convictions did not deter him from continuing in the

13   drug business. With this federal prosecution, however, it is clear that Mr. Barrera Huerta's

14   criminal activity has come to an end and he has committed himself to leading a law-abiding

15   life.

16         Following his arrest on September 16, 2020. Mr. Barrera Huerta spent seven days in

17   custody. Upon being released, Mr. Barrera Huerta fully complied with all of his release

18   conditions, with one exception. On October 21, 2020, he failed to submit to a random drug

19   test, but as explained in the PSR, he was confused about the testing protocol due to language

20   difficulties. PSR at ¶ 4. Once the procedure was clarified, Mr. Barrera Huerta appeared for

21   all required testing and did not produce a single positive test.

22         In addition, Mr. Barrera Huerta found new employment after his release. From June

23   2021 to March 2022, he worked as a driver for Inner City Delivery in San Leandro. On

24   March 14, 2022, he started his current employment as a landscaper with BrightView

25   Landscaping. *Id*. at ¶ 67.

26         In 2021, Mr. Barrera Huerta and his partner, Rebecca Marisol Diaz Mesa, had a

27

28   BARRERA HUERTA SENTENCING MEMORANDUM
    21cr0252-001 JD

second daughter. Mr. Barrera Huerta is a very devoted father, spending his free time caring for his children at home and taking them to the beach or the park, or out for walks. *Id*. at ¶ 56.

As evident from the attached letters, Mr. Barrera Huerta has strong support from his family and community. Ms. Diaz Mesa describes him as "a kind hearted person," who is "always willing to lend anyone a hand." He is also "a hard working man, very family oriented, (and a) positive person." Their two daughters "are very attached to him." "Jose Juan is an amazing father to our girls, he is very involved in their daily routines and spends quality time with the girls after work usually taking them to the park or a walk around our neighborhood." *See* Letter from Rebecca Marisol Diaz Mesa, attached as Exhibit A.

Mr. Barrera Huerta's sister, Yanet Barrera Huerta, notes that her " brother has always helped our family and close friends in Michoacan and in the US." He has also "looked out for [her] 3 kids, including them in their family activities." She and her brother "talk daily" and she is very grateful that he is so involved in the care of their parents, who live in Michoacan. *See* Letter from Yanet Barrera Huerta, attached as Exhibit B

In his letter, close friend Carlos Nava writes that Mr. Barrera Huerta "is responsible, loyal and has a helpful nature." He is "genuinely good to everyone and does so without expecting anything in return." According to Mr. Nava, there have "been countless times where (Mr. Barrera Huerta) helped me out through struggles of mine without a question, and I know many people can say the same." *See* Letter from Carlos Nava, attached as Exhibit C.

*See also* Letter from former co-worker and close friend Donald Mantilla (Mr. Barrera Huerta is "a hard working man with very good work ethics and most important a great father and a great family man"), attached as Exhibit D; Letter from friend Dora Luz (Mr. Barrera Huerta is "a family man . . . devoted to taking care of his family and loved ones"), attached as Exhibit E.

BARRERA HUERTA SENTENCING MEMORANDUM
21cr0252-001 JD

## II.    PLEA AGREEMENT

Mr. Barrera Huerta and the government entered into a written plea agreement pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. Mr. Barrera Huerta pled guilty to Count One of an Information charging him with distribution of 50 Grams and More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).  Paragraph 7 of the plea agreement permits Mr. Barrera Huerta "to argue for a variance from the Guidelines range determined by the Court based on 18 U.S.C. § 3553(a) factors."

## III.    PSR

The PSR determined that Mr. Barrera Huerta is safety valve eligible and therefore has a total offense level of 25. With a Criminal History Category IV, the applicable guideline range is 84 to 105 months. PSR at ¶ 90. The PSR recommends that the Court vary downward from the guideline range and impose a custody term of 63 months followed by four years of supervised release. According to the PSR, "The guideline range does not address Mr. Barrera-Huerta's personal history and characteristics and his time on U.S. Pretrial Services supervision." In addition, the PSR notes that "Mr. Barrera-Huerta is facing potential deportation and will be separated from his young family, and this alone could be even a bigger consequence for him." PSR, Sentencing Recommendation, at 3.

Mr. Barrera Huerta agrees with the PSR that the mitigating circumstances warrant a downward variance from the applicable guideline range, but believes he is entitled to a greater variance. He asks that he be sentenced to 40 months in custody followed by four years of supervised release.

## IV.    MR. BARRERA HUERTA RESPECTFULLY REQUESTS THAT HE BE SENTENCED TO 40 MONTHS IMPRISONMENT FOLLOWED BY FOUR YEARS OF SUPERVISED RELEASE WITH THE CONDITIONS RECOMMENDED IN THE PSR

In *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008), the Ninth Circuit explained that,

BARRERA HUERTA SENTENCING MEMORANDUM
21cr0252-001 JD

1

2   The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2).

3

4

5   All sentencing proceedings are begun by the district court calculating the applicable

6   Guidelines Range. The district court then should consider the sentencing factors set forth in

7   section 3553(a) to determine if they support the sentence suggested by either of the parties.

8   *Carty*, 520 F.3d at 991. These factors include:

9   the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7).

10

11

12

13

14   *Id*.

15   Here, as identified below and in the PSR, there are many sentencing factors that

16   support the sentence requested by Mr. Barrera Huerta.

17   **A.**   <u>**Nature of Prior Criminal Record**</u>

18   While Mr. Barrera Huerta has a criminal record, all but one conviction involves a

19   nonviolent crime – narcotics-related offenses and driving under the influence of alcohol. His

20   only prior crime of violence was a misdemeanor infliction of corporal injury while

21   intoxicated in 2013. In addition, Mr. Barrera Huerta has no history of possessing or using

22   dangerous weapons. The longest sentence previously imposed on Mr. Barrera Huerta was

23   720 days (for which he served only half the term). PSR at ¶ 43. The 40-month sentence

24   recommended by the defense is significantly longer and will have a strong deterrent effect

25   on him.

26

27   BARRERA HUERTA SENTENCING MEMORANDUM

28   21cr0252-001 JD

- 6 -

### B.   Traumatic Experiences in Mexico

Mr. Barrera Huerta had to cope with significant traumas while growing up on Mexico. His family was very poor. He had to leave school in ninth grade so that he could work to help support his family. In addition, his community was unsafe. Mr. Barrera Huerta heard frequent gunfire and his community was plagued by drug cartel murders, including the killings of family members. The reoccurring violence caused Mr. Barrera Huerta to immigrate to the United States at age 18.

### C.   Positive Performance While on Pretrial Release

Other than one missed drug test at the outset of pretrial release, Mr. Barrera Huerta has performed extremely well over 19 months of supervision. All drugs tests were negative, there were no new arrests, and all other conditions were fully satisfied.

### D.   Parental Obligations

As the father of two daughters, ages three and one, Mr. Barrera Huerta has significant parental obligations. To date, he has been very involved in the lives of his children, providing them care, attention, and financial support.

### E.   Strong Work Ethic

Since leaving school in ninth grade, Mr. Barrera Huerta has been almost continuously employed in a variety of jobs, including fishing,  construction, vitamin manufacturing, delivery, and landscaping. He has provided financial support to family and friends both in the United States and in Mexico.

### F.   Likely Deportation

Mr. Barrera Huerta is likely to be deported after he completes his sentence. As the PSR notes, being separated from his young family will likely be a serious consequence of his conviction.

### G.   Strong Family and Community Support

As the attached letters indicate, Mr. Barrera Huerta has strong support both from his

BARRERA HUERTA SENTENCING MEMORANDUM
21cr0252-001 JD

1   family and his community. This support provides him with a substantial incentive to not

2   reoffend. Mr. Barrera Huerta does not want to disappoint his family and friends again.

3   **V.   MR. BARRERA HUERTA SHOULD BE PERMITTED TO VOLUNTARILY**
         **SURRENDER FOR SERVICE OF HIS SENTENCE AT THE BOP**

4

5          According to the PSR, "[i]t appears the defendant is a person whose release is

6   restricted under 18 U.S.C. § 3143." PSR, Sentencing Recommendation, at 3. For that reason,

7   the PSR states that "the defendant is not considered to be a good candidate for voluntary

8   surrender." *Id*. Under 18 U.S.C. § 3145(c), however, a remand to custody is not required if

9   a defendant " meets the conditions of release set forth in section 3143(a)(1)" and "it is clearly

10  shown that there are exceptional reasons why such person's detention would not be

11  appropriate."

12         Here, the conditions for release set forth in § 3143(a)(1) have been met. There is

13  "clear and convincing evidence that (Mr. Barrera Huerta) is not likely to flee or pose a danger

14  to the safety of any other person or the community, if released." During more than 19 months

15  in which this case has been ongoing, Mr. Barrera Huerta timely appeared in court whenever

16  required and had no arrests or contacts with law enforcement. He also has no history of flight

17  during the pendency of his prior state court cases. Finally, but for a misdemeanor committed

18  almost nine years ago, he has not history of violence.

19         In addition, there are exceptional circumstances why a remand at sentencing would

20  not be appropriate. Mr. Barrera Huerta is the father of very young daughters, ages one and

21  three. He is a substantial source of their financial support. If Mr. Barrera Huerta is not

22  remanded, he can continue to work and pay for children-related expenses while awaiting

23  BOP designation and surrender. In addition, voluntary surrender will allow the family

24  additional time to prepare for life without Mr. Barrera Huerta at home.

25  **VI.   CONCLUSION**

26         Due to the many mitigating circumstances outlined above and in the PSR, the Court

27

28  BARRERA HUERTA SENTENCING MEMORANDUM
    21cr0252-001 JD
                                            - 8 -

should vary downward from the applicable guideline range and sentence Mr. Barrera Huerta to 40 months of imprisonment followed by four years of supervised release with the conditions recommended in the PSR. Imposing a greater term of imprisonment is unnecessary to achieve the sentencing goals of 18 U.S.C. § 3553(a). In addition, the Court should allow Mr. Barrera Huerta to voluntarily surrender to the BOP facility to which he is designated because the conditions for release under 18 U.S.C. § 3145(c) have been satisfied.

DATED: April 11, 2022                          Respectfully submitted,


                                               /s/ Mark Goldrosen
                                               MARK GOLDROSEN
                                               Attorney for Defendant
                                               JUAN JOSE BARRERA HUERTA

BARRERA HUERTA SENTENCING MEMORANDUM
21cr0252-001 JD

- 9 -